## Weil, Roth & Company v. City of Paris, et al.

(Decided October 5, 1917.)

## Appeal from Bourbon Circuit Court.

1. Schools and School Districts—Election to Incur Bonded Indebtedness—When May be Held.—Under the provisions of section 3606, Kentucky Statutes, any city of the fourth class in which a system of public schools shall be established and maintained, shall constitute one common school district, and a school election in such district for the purpose of incurring a bonded indebtedness to construct, remodel or repair the school buildings of the district and otherwise adequately equip the schools, may be held on a day, after being properly called, other than the general election day.

2. Schools and School Districts—Election to Incur Bonded Indebtedness—Overruled Cases.—It is the object of section 155, Constitution, to take all character of school elections out of the operation of the rules prescribed for and limitations placed upon all other elections; therefore, a graded school bond election, ordered by a city council, may be held upon a day other than a regular election day. The case of Ashland v. Culbertson, 103 Ky. 161, insofar as it may be regarded as holding that a graded school bond election cannot be legally held on a day other than a regular election day, is overruled.

PECK, SHAFFE & PECK for appellants.

TALBOTT & WHITLEY for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE SETTLE—
Affirming.

The single question presented for decision by this appeal is whether the appellants, Weil, Roth & Company, shall be compelled, under their contract to that effect, to accept and pay for, at their face value, $46,000.00 of bonds issued by the city of Paris for use in the erection and equipment of additional school buildings for the white and colored children of the city. Appellants express their willingness to take and pay for the bonds as agreed, but claim that it would not be safe for them to do so because the election at which the voters of the city authorized the issuance of the bonds was held June 2, 1917, instead of on the day a regular election was required by law to be held. In other words, it is their contention that the holding of the election on June 2, 1917, instead of on a regular election day, rendered it illegal and void. They cite in support of this conten-

tion the case of the City of Ashland v. Culbertson, 103
Ky. 161. An examination of the opinion in Ashland v.
Culbertson will show that little consideration was given
the question presented for decision in the instant case.
In that case the election authorizing the sale of the school
bonds was held at the general election of county officers
in November, 1894, and its validity was assailed because
the election was not held on a different day and solely
for the purpose of taking the sense of the people as to
whether the bonds should be issued. The following ex-
cerpt from the opinion will indicate the cursory consid-
eration given the question by the court, as well as the
summary disposition made of it:

"The first objection has been answered by this court
in Belknap, etc., v. City of Louisville, etc., 99 Ky. 474,
where it was held (Judge Landes dissenting) that the
submission of such questions to the voters, must be at a
regular election. It may be observed here that the notice
for the election and the manner of conducting the same
seem to have been in substantial accordance with the re-
quirements of the constitution and the statutes. The
vote stood, for the issual of the bonds, 925, and against
it, 185, out of a total vote at the election of 1,226. The
proposition, therefore, carried under section 157 of the
constitution, as construed in the case cited."

It will thus be seen that the court rested its decision
solely upon the case of Belknap, etc., v. City of Louis-
ville, etc., *supra,* although the bonds under considera-
tion in that case were not school bonds, but were bonds
to be issued for the purchase and maintenance of parks,
the issuance of which could only be authorized by vote
of the people of the city of Louisville at an election on
the regular election day, as required by the provisions
of the constitution, referred to in the opinion. The elec-
tion in the instant case, however, was held in accordance
with section 155 of the constitution, which does not re-
quire such elections to be held on the regular election
day. Section 155, Constitution, is as follows:

"School Elections—Exceptions In Favor of. The
provisions of section 145 to 154, inclusive, shall not ap-
ply to the election of school trustees and other common
school district elections. Said elections shall be regu-
lated by the General Assembly, except as otherwise pro-
vided in this constitution."

Sections 145 to 154, inclusive, referred to in section
155, treat of elections other than elections respecting

common schools, that must be held on a regular election day; whereas, it is the object of section 155 to permit the. holding of common school district elections at times other than the day fixed by the constitution for the holding of regular elections.

Paris is a city of the fourth class, and section 3588, Kentucky Statutes, confers upon cities of this class the power to maintain a system of public schools, and provides for the election of a board of education, to which shall be entrusted the control of the public schools of the city, and the property and funds thereunto belonging. Section 3588a empowers such cities to organize a system of free graded schools, for the education separately of the white and colored pupils of the city; authorizes the city council to appoint a board of trustees for such schools and to levy such a tax from time to time as shall be necessary to erect necessary buildings and maintain the schools. Section 3606, Kentucky Statutes, provides:

"Any city of the fourth class in which said system of public schools shall be established and maintained shall constitute one common school district, and the superintendent of public instruction shall pay each year, out of the common school fund of the state to the white board of education, the same amount *per capita* for each white child of pupil age in said district, and to the colored board of education the same amount *per capita* for each colored child of pupil age in said district, as he shall pay to each child of pupil age in other school districts in the state. . . ."

Section 3490, sub-sections 2-34, more specifically define the powers of the council of cities of the fourth class with respect to the levy and collection of taxes, sub-section 2 giving authority to levy and collect for municipal purposes an annual *ad valorem* tax not exceeding 75 cents on every hundred dollars of all property made taxable by law for state purposes; in addition, a tax not exceeding 50 cents on the hundred dollars' worth of property taxable for state purposes, for the maintenance of public schools or the erection of buildings for public purposes; also a tax not exceeding 50 cents "to meet the principal and interest of any bonded debt hereinafter authorized, and not exceeding $1.00, to meet the principal and interest on, and provide a sinking fund for the extinction of, any bonded debt contracted before the adoption of the present constitution, provided

no greater levy to pay such indebtedness be authorized by the laws existing at the creation of such debt. Provided, however, that the limitations hereinbefore prescribed of the tax that may be levied for school purposes shall not apply where a bonded indebtedness has been incurred for the construction, improvement, or acquisition of school buildings or property; and when such an indebtedness has been incurred there may be levied in addition to the tax hereinbefore authorized, an annual *ad valorem* tax sufficient to pay the interest on such indebtedness, and also to constitute a sinking fund for the payment of the principal thereof; the provisions hereof shall apply to any bonded indebtedness whether heretofore or hereafter created." Sub-section 34 provides, substantially, that if at any time the board of council shall deem it necessary to incur any indebtedness, the payment of which cannot be met without exceeding the income and revenue provided for the city for that particular year, they shall give notice of an election by the qualified electors of the town to be held, to determine whether such indebtedness shall be incurred. This sub-section also provides that the notice of the election shall specify the amount of the indebtedness proposed to be incurred, the purpose of same and the amount necessary to be raised annually by taxation for an interest and sinking fund; declares the time and manner of its publication, and that if at such election two-thirds of all the qualified voters therein shall have voted in favor of incurring the indebtedness, it shall be the duty of the board of council to pass an ordinance providing for a mode of creating such indebtedness and of paying the same. Provided that such indebtedness shall not in any event exceed the limit provided in the constitution for cities of the fourth class.

It appears from the record before us that the election here involved was held in accordance with the requirements of the several sections of the statutes referred to and it is conceded that it was ordered by a proper resolution and notice passed and given by the board of council of the city of Paris, in pursuance of a request of the board of education of the city contained in a written report setting forth the needs of the common schools of the city, and the necessity for the city's incurring the indebtedness to the amount represented by the bonds in question; and while none of the provisions of the statutes to which reference has been made, in express terms,

seems to declare that such an election shall be held on a day other than a regular election day, section 155, Constitution, permits it to be so held. At least, such is the interpretation we have repeatedly given that section. One of the later cases in which we so held was that of Clark v. Trustees Dawson Springs Graded School District, 164 Ky. 210, in the opinion of which it is said:

"But it is contended that the election should have been held on the regular election day, and that a graded school election does not come within the exception in section 155 of the Constitution, providing that the provisions of sections 145 to 154, inclusive, of the Constitution, 'shall not apply to the election of school trustees and other common school district elections.' But this contention is purely technical and it attempts to draw an unwarranted distinction between a common school district and a graded school district. Section 155 clearly manifests a purpose to take all character of school elections out of the operation of the rules prescribed for and limitations placed upon all other elections. Crook v. Bartlett, 155 Ky. 311."

Formerly, elections to take the sense of the voters of a graded common school district in the matter of incurring indebtedness by the issuance of bonds was required by section 4464, Kentucky Statutes, to be ordered by the county judge of the county upon the written petition signed by at least twenty-five per cent. of legal voters, taxpayers in the district to be affected. Under the provisions of that section the county judge was authorized to cause the election to be held either at the next regular state, town or city election to be held in the county, "or on any other day fixed by said judge in said order." And while by a later legislative act the power to order an election for school purposes in a city of the fourth class seems to have been taken from the county judge and vested in the board of council of such city, the provision of section 4464, permitting the election to be held on a day other than the day of the regular election, manifested the legislative intent to bring such elections within the exception authorized by section 155, Constitution; and in none of the acts respecting common schools passed by the legislature since the enactment of that section, have we been able to find any provision repealing the authority it gives to hold an election, affecting a graded common school district, on a day other than that of the regular election.

An examination of the numerous cases passing upon the validity of such elections as the one under consideration, decided by this court since the decision of Ashland v. Culbertson, *supra,* will demonstrate that none of them is in accord with the conclusion reached in that case. On the contrary, they expressly decide that the holding of such elections are not restricted to the regular election day. Sisk v. Gardiner, 25 R. 18; Crook v. Bartlett, 150 Ky. 305; Clark v. Trustees Dawson Springs Graded School District, 164 Ky. 210; McKinney v. Board of Trustees of Cadiz Graded School District, 144 Ky. 85; Smith v. Board of Trustees Shelbyville Graded School District, 171 Ky. 39. In the most recent of these decisions, Smith v. Board of Trustees Shelbyville Graded School District, the question is tersely disposed of in the following language:

"Nor is this election invalid because it was held upon a day other than the regular election day provided by law."

It follows from what has been said that in holding the election on the question of voting bonds for school purposes, the city of Paris had the same right as any other graded common school district to hold it on any day selected by its board of council. Hence, there can be no doubt of the validity of the election held June 2, 1917. The case of City of Ashland v. Culbertson, 103 Ky. 161, in so far as it conflicts with the conclusion herein expressed, is hereby overruled.

For the reasons indicated, the judgment of the circuit court, requiring appellants to accept and pay for the bonds is affirmed.