## Trustees of Graded Free Colored Common Schools of the City of Mayfield, Kentucky v. Trustees of the Graded Free White Common Schools of the City of Mayfield, Kentucky.

(Decided May 17, 1918.)

### Appeal from Graves Circuit Court.

1. Schools and School Districts—Apportionment of Tax on Cor-porations to White and Colored Schools.—Revenue arising from tax on corporations in a city of the fourth class must be appor-tioned according to the numerical pupilage of the white and colored schools of said city even though the tax thus collected is upon an assessment made only by the white board of trustees.

2. Schools and School Districts—Disposition of Revenue—Constitu-tional Law.—That part of section 3588a, Kentucky Statutes, which attempts to appropriate all taxes from corporations to the use and benefit of the white graded schools in cities of the fourth class, is in contravention of the Federal and State Constitutions, and therefore void.

3. Schools and School Districts—White and Colored Schools—Ap-portionment of Tax.—It is not important whether the stock of a corporation be owned entirely by one race or the other, the taxes arising from an assessment of the property of the corporation must be apportioned between the two schools.

HESTER & HESTER for appellants.

W. J. WEBB and J. E. ROBBINS for appellees.

OPINION OF THE COURT BY JUDGE SAMPSON—Revers-ing.

Mayfield is a city of the fourth class. As such it maintains a free graded school for white children, and a separate free graded school for colored pupils. This action was instituted by the trustees of the colored graded school against the trustees of the white graded school of Mayfield to recover of the latter $2,797.43, al-leged to be due the colored graded school as its pro rata part of $14,226.77 the total *ad valorem* tax collected and appropriated by the white graded school trustees from all corporations liable to taxation in the city of Mayfield. The white board of trustees collected from the corporations of the city of Mayfield taxes amount-ing to $14,846.56 for certain years named in the petition. Of this sum the plaintiffs, the colored board, claim they are entitled to the $\frac{2778}{14,513's}$ part thereof, or $2,659.25, there

being for the said years 2,778 colored pupil children
and 14,513 white pupil children in the district (The ag-
gregate enumeration for the six years named.)

The trial court sustained a general demurrer to all
paragraphs in plaintiffs' petition except the one alleg-
ing that the Young Men's Building Association, a cor-
poration owning property in the district, some of the
stockholders of which were white and others black, and
which corporation had been assessed by and had paid
to the white school board taxes in the sum of $71.55,
and of which sum the colored board claimed its pro rata
share, or $13.65. The school based its claim upon the
ratio of colored pupil children in the district to the
whole number of pupil children therein, but the court
did not accede to this claim but proceeded upon the
theory that the colored board of education was entitled
to recover that proportion only of $71.65 taxes paid by
the corporation which the colored stockholders in said
company bore to the whole stock issued and outstanding.
This view of the trial court was erroneous. No doubt
the demurrer to this paragraph was overruled upon the
idea that since it was affirmatively shown that part of
the stockholders of this company were black and part
white, that this paragraph of plaintiffs' petition mani-
fested a right of recovery to that part of the taxes from
this corporation which corresponded to the share or
proportion of the stock so owned and held by colored
persons only in the company. Afterwards, as the
amount sought to be recovered in that paragraph was
only thirteen dollars and sixty-five cents, the trial court
sustained a special demurrer to the petition as it then
stood and dismissed plaintiff's action because, as it is
asserted, the court did not have jurisdiction of the
amount in controversy. The amount sued for was $2,-
797.43 which, of course, was the jurisdictional amount.
The sustaining of the demurrer to all of the. petition,
except that paragraph setting forth the thirteen dollar
item, did not relieve the court of jurisdiction. Juris-
diction in such cases depends not upon the amount the
plaintiff may show himself entitled to recover, but upon
the amount sued for. Montgomery v. Glasscock, 121
S. W. 668; Denham v. Western Union Telegraph Co.,
87 S. W. 788. The special demurrer should, therefore,
have been overruled.

The principal question presented is: Can the white graded school trustees of said city appropriate the entire revenue arising from taxes on all corporations of the city to the use of the white graded schools, and thus exclude the colored graded school and its board of trustees from the benefits of such revenue? This question has never been passed upon by this court although in one or two instances a question much akin to this was presented and determined. The appellants, the board of trustees of the colored graded school, insist that the statutes, section 3588a, which provides in part,

"No tax raised from the property or poll of any white person or *corporation* in said city shall be used for the support of said graded free colored common schools of said city, nor shall any tax raised from the property or poll of any colored person be used for the support of said graded free white common school of said city," is in violation of the Fourteenth Amendment of the Federal Constitution and of the Kentucky Constitution in that it does not afford the colored schools the equal protection of the law, because it does not give to the colored pupils the same benefits under the system of taxation that is received by white pupils of the same district. It will be observed that the statute prohibits the use of taxes raised from the property of white persons or *corporations* being applied to the maintenance of colored schools, and a like provision is made with reference to the property of colored persons and schools except the property of *corporations* is not included, for in this respect the statute provides, "Nor shall any tax raised from the property or poll or any colored person be used for the support of said graded free white schools of said city," thus omitting the word *corporation*. In other words the statute attempts to appropriate all of the funds arising from tax on the property of all *corporations* to the use and benefit exclusively of the white schools, and this, too, although the limits and boundaries of the white school district and that of the colored school district are identical and coincide in every particular. Proceeding under this statute the board of trustees of the white graded school of Mayfield has collected and now withholds from the board of the colored graded school all revenue arising from taxes on corporations of all kinds.

It must be conceded that the property of a corporation is subject to taxation in the same manner as that

of natural persons. A corporation can not be said to have color; it is neither white nor black. Corporations are entities created by the state and by it given a name and a situs. They are creatures of the land, and this law has its source in all the people. The Commonwealth is made up of all the people, both white and black, and so constituted it has power and authority to grant charters to corporations and thus create these fictitious persons. While a corporation is neither white nor black, and has no politics, religion, sex, social standing or tangible form, and can not be classed as either belonging to the Caucasian or African race, it must nevertheless bear its share of the burden of the government. Under our law either white men or black men may organize a corporation, or men of the two races, acting jointly, may organize and conduct a corporation. Sometimes a corporation has a large number of stockholders, some white and some black, but to ascertain which stockholders are white and which are black would be a difficult task. With this the state has nothing to do. It does not matter one whit whether a stockholder is white or black so far as the validity and standing of the corporation are concerned, nor as to the tax it pays or the appropriation made thereof. There appears to be no more reason to assert that a corporation belongs to the white or Caucasian race than to declare it to be of the African or negro race. It may be that most of the stockholders, or perhaps all of the stockholders, of a given corporation are white, yet these individual stockholders are separate and distinct from the corporation itself. The artificial person has a separate entity recognized in law distinct and apart from the stockholders or directors who organize and conduct the company or own stock in it.

Some of the corporations taxed in this case are foreign to the state of Kentucky. Whether their stockholders are white or black is unknown, or if part be white and part black, what proportion is the white and what black is of no concern.

The Statutes, section 4101, with reference to taxation for school purposes, specifically provide that the tax arising from railroads and bridges shall be apportioned between the white and colored schools in the ratio of their numerical pupilage, but no such provision is contained in the charters of fourth class cities. A large

part of the school tax raised for maintaining graded schools in fourth class cities comes from the corporations, and if the white schools have exclusive right to appropriate not only the tax from the property owned by all white citizens and taxpayers but likewise all taxes arising from corporations included in the boundary, the colored schools must suffer grievously because the revenue arising from the assessment of property owned by colored taxpayers is less than that of the white, not to mention the greater amount derived from corporations by the white schools.

In sustaining the general demurrer the trial court failed to make a necessary distinction between the taxes payable by the corporation and the taxes payable by its stockholders or directors. The stockholder lists his shares along with other intangible assets for taxation and must pay upon his shares unless this duty is performed by the corporation for him, but in no instance is the stockholder required to list and pay taxes on the property of the corporation. This is done by the corporation.

There is and can be no good reason why the revenue arising from taxation of the property of these artificial beings, these children of the state, having neither tangible form nor color, should be devoted exclusively to the education of white children. Colored children are the wards of the state in the same sense and to the same extent as are white children, and are equally entitled to care, protection and training, and this is vouchsafed not only by our form of government but by the express terms and provisions of our Federal and State Constitutions. The prime object and fundamental principle of our free school system is to educate all citizens of the state to the end that they may become more efficient. The well being of every community in the state and of the state at large is best subserved by affording every child in the Commonwealth an opportunity to acquire an education.

' Illiteracy is the bane of society; its greatest burden and most dangerous enemy. The white race being predominant and holding most of the taxable property, under the rule already well established in this jurisdiction of sequestering all revenue from the property of white people to the support of white schools only, has decidedly the best of the situation, and it would

amount to an open invasion of the Bill of Rights to hold that revenue arising from property held by legal entities, corporations, shall also be applied solely to the same end, to everlasting ruin of the colored schools. Such a rule would amount to a nullification of the underlying principles of our public school system and render the poorest and most helpless of our citizenship, those who are and have always been the state's special object of protection and care, a hopeless burden and menacing danger instead of an efficient and helpful contingent. To take away from the colored schools the entire benefit of revenue arising from corporations would reduce that race to the necessity of levying a tax on what little property it owns at so high a rate as to amount to confiscation and eventually lead to obliteration. If this source of revenue be denied the colored schools it will amount to a violation of section 183 of the State Constitution, which provides that ''the General Assembly shall, by appropriate legislation, provide an efficient system of common schools,'' because no efficient system, or system at all, could be maintained in most colored communities from the bare revenue arising from the property of colored people.

The Supreme Court of the United States in the case of Strauder v. West Virginia, 100 U. S. 303, after quoting the Fourteenth Amendment to the Federal Constitution, says:

''What is this but declaring that the law in the state shall be the same for the black as for the white; that all persons, whether colored or white, shall stand equal before the law of the states, and, in regard to the colored race, for whose protection the amendment was primarily designed, that no discrimination shall be made against them by the law because of their color? . . . . The right of exemption from unfriendly legislation against them distinctively as colored, exempt from legal discriminations implying inferiority in civil society, lessening the security of their enjoyment of the rights which others enjoy, and discriminations which are steps towards reducing them to the condition of a subject race.''

As a matter of public policy and in the interest of peace and good order, the right to maintain separate schools for white and colored children, has often been upheld. But this question is not involved in this case.

Neither is the question of the right of a local community by vote to supplement its school fund by an additional tax for the betterment of its schools, any bearing upon the questions involved in this case. It can not be maintained that the corporations have voted a tax or participated in an election looking to the supplementing of the school fund; especially is this true of a foreign corporation.

That part of the Statutes, section 3588a, which attempts to appropriate the whole of the moneys arising from tax on corporations to white schools is violative of the equal protection clause of the constitution, and therefore without force, and the money thus arising must be apportioned between the two schools in the ratio of the pupil children of each race to the whole number in the district. This must follow because the property of corporations can not be subjected to double taxation; it must not be subjected to taxation by both schools because that would amount to double taxation, and the amount levied and collected by the white board must, therefore, be apportioned between the two schools in the ratio of the pupil children of each to the whole. This rule must obtain because the property of corporations can only be taxed in the same manner and to the same extent as individuals and since the property of individuals, belonging to each race, can only be subjected to taxation by one of the schools it follows that the property of corporations must be treated in like manner.

Judgment reversed with directions to overrule each of the demurrers, and for proceedings consistent herewith.

Whole court sitting.