## Moss, et al. v. City of Mayfield, et al.

(Decided December 19, 1919.)

### Appeal from Graves Circuit Court.

1. Schools and School Districts—White and Colored Districts—Separate Taxing Units.—Where a city of the fourth class has created separate school districts within the city for white and colored children as authorized under section 3588a, Kentucky Statutes, both school districts are separate taxing units, the white school district including only white persons and their property within the city and the colored school district including only colored persons and their property therein.

2. Schools and School Districts—Issue of Bonds—Two-thirds Vote of the People.—The city for either the white or colored school district can issue bonds not in excess of the constitutional inhibition when authorized so to do by two-thirds of the legal voters in the school district at an election called for the purpose by the city council at the request of the board of education of the school district.

3. Schools and School Districts—Colored Citizens Entitled to Vote In Their Districts.—As only the colored citizens of the city are legal voters in the colored school district, only they are entitled to vote therein.

4. Schools and School Districts—Indebtedness.—A debt thus incurred for either school district is its debt, and not the debt of the city.

5. Schools and School Districts—Illegal Bond Issue as to Excess Indebtedness.—The colored school district having only $261,660 of taxable property therein it could not under section 158 of the Constitution incur an indebtedness in excess of two per centum thereof, and a proposed bond issue of $10,000 being in excess of such limit was illegal as to the excess.

AUBREY HESTER for appellants.

R. O. HESTER for appellees.

OPINION OF THE COURT BY JUDGE CLARKE—Reversing.

Under ordinances passed by the board of council pursuant to section 3588a, there exist in the city of Mayfield two separate graded free public schools—one for the white children under the control of a board of education, and another for the colored children under the control of another board of education. Each school receives from the state its pro rata of the school fund as provided by the Constitution and statutes.

On September 10, 1908, the board of education for the white graded school represented to the board of council that it was necessary to raise $75,000.00 to be used in the purchase and erection of school buildings in the city. The council, pursuant to the request of the board of education, enacted an ordinance submitting to the white voters of the city the question whether they would authorize an indebtedness of $75,000.00 to be used in the purchase and erection of school buildings in the city to be paid by taxation upon the property of the white people subject to taxation.

The election was duly held and more than two-thirds of the votes cast in the election, which was open only to white voters, were in favor of the proposition. The validity of this election as authority to issue bonds was contested in a suit by taxpayers upon the ground that two-thirds of the voters of the municipality had not authorized the proposed indebtedness because the proposition was only submitted to white voters and not to all the voters of the municipality.

In that case—Crosby, et al. v. Mayfield, 133 Ky. 215—this court held the election valid and not in contravention of section 157 of the Constitution, giving its reasons therefor as follows:

"The proposition is to incur an indebtedness to furnish the white school with proper school buildings. The question was submitted to all the white voters or to all the persons who have any interest in the question, or who will be liable in any manner for the tax. The meaning of the Constitution is that no liability shall be imposed without the assent of the voters; but it was not intended by the Constitution that the question should be submitted to persons who had no interest in it. The boundary of the city constitutes the white school district. This white school district is a municipality within the meaning of the section. The tax is levied upon the property of the white persons in this district, and these white persons are the voters in this municipality. In like manner a similar tax might be submitted to the colored voters for an improvement of the buildings of the colored school. Section 187 of the Constitution provides that separate schools for white and colored children shall be maintained. This provision of the Constitution requires the general assembly to maintain separate schools for the white and colored children, and, if questions of taxation could not be submitted to the white people when they concern the white schools or to the colored people when they concern the colored schools, the growth of the school system in the state would seriously suffer, for each race is more directly interested in its own school than in the school of the other. Section 157 must be read in connection with section 187, and, when so read, it in no manner interferes with the power of the general assembly to submit to either race questions of taxation affecting only its own schools."

The effect and meaning of the court's conclusion, while not stated in so many words, is necessarily that the white school district and colored school district, though covering the same territory, are separate and distinct taxing districts. The white graded school district includes only the property of white persons living within the district, and only white people are citizens thereof, and likewise the colored graded school district includes only colored citizens and their property located therein. In addition to these two separate graded school districts, and covering exactly the same territory, is the city

another separate and distinct municipality which includes all property and people therein.

There are thus three separate and distinct taxing districts covering exactly the same territory but performing different governmental functions and entirely independent of each other, except that an indebtedness cannot be incurred, or a tax levied by the board of education of either of the school districts without the concurrence and assistance of the board of council of the city, which in calling elections and issuing bonds for the school districts acts for them and not itself. The bonds it issues for the school district for either race are by express provision of section 3588a, payable out of funds derived from taxes levied on the property and polls of the race whose school issues the bonds, and it is further provided that taxes derived from property or polls of the other race cannot be used for the purpose. It is only because of this provision, which clearly makes the indebtedness of either school district its own and not the city's indebtedness, that saves an election participated in only by voters of one race from violating section 157 of the Constitution, because it is apparent two-thirds of a part only of the voters in a city could not vote an indebtedness upon the city.

This peculiar situation seems to be fully authorized under the peculiar provisions of the charter of cities of the fourth class, and to have been regularly adopted by the city of Mayfield. Cities of this class have the option, however, under section 3588 to maintain separate schools for white and colored children in one district and under one board of education, or a graded school system may be maintained without co-operation of the city, as provided for under sections 4464 to 4500b of the general statutes. Thornton v. White, 162 Ky. 796; Miller v. Feather, 176 Ky. 268; Weil-Roth & Co. v. City of Paris, 176 Ky. 841; Trustees of Graded Free Colored Common Schools of Mayfield v. Trustees of Graded Free White Common Schools of Mayfield, 180 Ky. 574; Same case on petition for rehearing, 181 Ky. 304, and Same v. Same, 181 Ky. 810.

Under authority of and following the course pursued in Crosby v. City of Mayfield, *supra*, the board of education of the free colored graded schools of Mayfield, in April, 1919, represented to the board of council of the city that it was necessary to raise $10,000.00 to be used

in the purchase and erection of school buildings for the colored schools in the city. Council, pursuant to the request of the board of education, enacted an ordinance submitting to the colored voters of the city the question whether they would authorize an indebtedness of $10,000.00 to be used in the purchase and erection of school buildings in the city and to be paid by taxation upon the property of the colored people subject to taxation.

The election was duly held and 308 votes were cast in favor of the bond issue and only 12 against it. The result was certified to the council and it was proceeding to issue the bonds when this suit was brought by one white man and one colored man to enjoin the bonds being issued. The circuit court dismissed the petition and the plaintiffs have prosecuted this appeal, contending, as was done in the case of Crosby v. Mayfield, *supra*, that the proceeding is in violation of section 157 of the Constitution because the proposition was only submitted to the voters of one race and not to all the voters of the municipality. The opinion of this court in Crosby v. Mayfield, *supra*, is conclusive upon the question, as we have already pointed out, because the question was submitted to all of the voters of the taxing district proposing to incur the indebtedness, viz.: the colored school district, and assented to by more than two-thirds of the voters therein.

2. It is also contended that the issuance of $10,000.00 worth of bonds to be paid by taxation upon the property of the colored people subject to taxation is in excess of the indebtedness which the free graded colored school district may incur under section 158 of the Constitution. That the indebtedness attempted is the indebtedness only of this school district and not of the city or of the free graded white school district is clear from what we have already said in this opinion in explanation of the opinion in Crosby v. Mayfield. The indebtedness that such a taxing district may incur, even when authorized by a two-thirds vote of the citizens thereof under section 158 of the Constitution, is two per centum of the value of the taxable property therein, to be estimated by the assessment next before the last assessment previous to the incurring of the indebtedness. The taxable property in the free graded colored school district of Mayfield is, as we have seen, the property owned by colored citizens, and in addition, as was determined in the case of Trustees of

Graded Free Colored Common Schools of the City of Mayfield v. Trustees of Graded Free White Common Schools of the City of Mayfield, 180 Ky. 574, 203 S. W. 520, the proportion of corporate property in the city that the number of colored children bears to the whole number of children of school age in the city.

As shown by the pleadings, which by agreement are to be considered as an agreed statement of facts, the assessed taxable value at the assessment next before the last of property owned by colored persons in the city was $50,000.00, and of corporations $1,000,000.00. There are 334 colored children and 1,244 white children of school age in the city, and the colored school district is therefore entitled to 334/1578ths of the $1,000,000.00 assessed by corporations, or about $211,660.00. Adding this latter sum to the $50,000.00 assessed by colored individuals makes the total taxable value of property in the colored school district approximately $261,660.00.

As the proposed bond issue of $10,000.00 is largely in excess of two per centum of the taxable value of the property in the district, the chancellor erred in not enjoining so much thereof as exceeded the constitutional limit.

Wherefore the judgment is reversed with directions to enter a judgment in conformity herewith.

Whole court sitting.