## Detroit Fidelity & Surety Company v. Mason Construction Company et al.

(Decided October 4, 1929.)

JOHN MARSHALL, Jr., for appellant.

H. L. JAMES for appellees.

OPINION OF THE COURT BY COMMISSIONER TINSLEY—Affirming.

The appellant, as plaintiff below, instituted this action against appellees, as defendants, to recover the sum of $568.68, additional or overrun premium alleged to be due on it on a bond executed by it for appellees guaranteeing their performance of a contract for the construction of a state highway in Larue county, Ky.

In the petition it is alleged that, upon written application of defendants, it executed as surety for them to the commonwealth of Kentucky a bond whereby it agreed to indemnify the commonwealth against any loss occasioned by the failure of defendants to complete the work within two years from July 31, 1924, and to itself complete the work, at the contract price, in event defendants became financially or otherwise unable to complete it; that the contract price at which defendants undertook to do the work was $222,229.56, but, in the application to it for the bond, the contract price was stated to be $223,624; that for this bond defendants paid to it a premium or charge of $3,354.46 for the two years from July 31, 1924, to July 31, 1926; that the charge for the bond was based upon a rate of $7.50 per thousand of the contract price, subject to final judgment upon completion of the contract, based upon the actual amount of work done as shown by the certificate of the engineer in charge of the work; that the actual amount of work done under the contract was $240,752.42, and that defendants paid to it the sum of $277.84 as additional premium on the amount in excess of the estimated amount of the contract. It was further alleged that defendants failed to complete the work within the two years, and did not complete it until November 23, 1926, and that its liability under the bond was thus kept in force for a period of 115 days beyond the time for which it was paid, and that it was therefore entitled to recover of defendants the sum of $568.68 additional premium or charge, for which it prayed judgment.

746

The application made by defendants to plaintiff, is signed by each of them, and is the contract between the parties upon which plaintiff bases its right to recover. A photostatic copy of it was filed and made part of the petition "the same as if copied" therein. By their answer defendants traversed the material allegations of the petition, and in a second paragraph alleged that they could have completed the contract within the time fixed, but that the highway department ran out of funds with which to carry on the work, and that, at the instance and request of the highway department, and by and with the consent of plaintiff through its authorized agent, the work was suspended from November 1, 1925, until July 1, 1926, and because of which the time for completion of the work was extended by the highway commission until November 23, 1926, and that plaintiff agreed to such extension, and because thereof it was estopped to claim any additional premium, but that, if it was entitled to any additional premium, the amount thereof under the terms of the application was only $15. Plaintiff demurred to the second paragraph of the answer, and thereupon defendants moved the court to carry the demurrer back to the petition, on the ground that the petition did not state facts constituting a cause of action against them for more than $15, and for which reason the court was without jurisdiction. Upon consideration of the motion, the demurrer was carried back to the petition and sustained, and judgment rendered dismissing the petition, to reverse which it is urged (1) that the court's construction of the contract is erroneous, and (2) that the amount in controversy necessary to give the court jurisdiction is to be measured, not by the amount which plaintiff is ultimately found to be entitled to recover, but by the amount of the claim asserted in the petition.

In the petition it is alleged, and the copy of the application filed with and made a part of it provides, that the applicants (defendants) do "hereby covenant, promise and agree to pay, in advance, the premium of fees hereafter agreed upon . . . for the contract bond, $3,354.60, for the two years, or fraction thereof, and $15.00 per annum in advance thereafter, it being understood and agreed that said rate for the contract bond is based upon a charge of $7.50 per thousand of the contract price subject to final adjustment upon completion of the contract based upon the actual amount of work done as shown by the certificate of the engineer or archi-

tect in charge. Such annual payments to be made until the undersigned shall deliver to said company at its home office in the City of Detroit competent written evidence of its discharge from such suretyship, and from all liability by reason thereof.''

That is admittedly the clause which fixed the premium to be paid and the amount of defendant's liability. Appellant argues strenuously that it was clearly contemplated (1) that the date of the completion of the work might occur after the lapse of the two years covered by the advance premium, and (2) that an additional premium was to be charged and paid for this overrun in time, to be calculated at the rate of $7.50 per thousand per annum on the total amount paid on the contract until completion of the work, and insists that the real meaning and proper construction of the quoted clause of the application is that ''defendants agreed to pay $3,354.46 in advance representing the two-year premium at $7.50 per thousand on the estimate contract price, to pay $15.00 a year in advance thereafter until the completion of the work and to pay final premium computed for the actual time the work took over the two years already paid for on the actual contract price at $7.50 per thousand.''

To such a construction we cannot agree. Defendants were required, by the contract, to pay ''$3,354.46 for the two years, or fraction thereof, and $15.00 per annum in advance thereafter.'' The meaning of the contract and the construction of the quoted clause of the application is that, if the contract should be completed within the two years and the total amount of the contract did not exceed $223,624, the premium for the bond was $3,354.46; if the time necessary for completion extended beyond two years, and the total amount of the contract did not exceed $223.624, plaintiff would be paid for the additional time at the rate of $15 per annum; and, if the time exceeded two years and the total amount of the contract exceeded $223,624, an additional charge would be made and paid for the bond at the rate of $7.50 per thousand for the excess amount plus the $15 per annum. The language employed is not ambiguous. It is so clear and plain that he who runs may read. It follows, therefore, that, plaintiff having been paid the sum of $277.84 additional premium for the amount of the contract in excess of the estimated amount stated in the application, defendants were indebted to plaintiff only for the excess time beyond two years, which was to be paid for at $15 per annum.

It is the rule that, when a cause of action is founded upon a writing which fixes the liability of the defendant, and the writing is filed with and made part of the pleading, if it contradicts the allegations of the pleading, the writing will control (Hudson v. Scottish Union & National Insurance Co., 110 Ky. 722, 62 S. W. 513); and, upon a test of the sufficiency of the pleading, the writing will be considered and construed (Black v. O'Hara, 175 Ky. 623, 194 S. W. 811).

In Durham v. Elliott, 180 Ky. 724, 203 S. W. 539, 540, it is said: "An exhibit, if in conflict with the allegations of a pleading, cannot aid the pleading, but may render it bad; and if an exhibit referred to and filed contradicts an allegation of the pleading, the exhibit will control the allegation, unless the exhibit be expressly impeached or explained by the facts stated in the pleading."

To the same effect are the cases of Covington Gas Light Co. v. City of Covington, 101 S. W. 923, 31 Ky. Law Rep. 124; Hedges v. Combs, et al., 197 Ky. 469, 247 S. W. 711; Lockhart v. Kentland Coal & Coke Co., 182 Ky. 673, 207 S. W. 18. There was no attempt in the petition here to impeach or explain the exhibit filed with and made part of it.

It is insisted, however, that the lower court, and this court as well, had and has jurisdiction of this case because the amount sued for is $568.68, and that the amount claimed in the petition, rather than the amount the plaintiff ultimately shows himself entitled to, determines the question of jurisdiction. Ordinarily this is true, and it is so held in the cases of Montgomery v. Glasscock (Ky.) 121 S. W. 668, Denham v. Western Union Telegraph Co., 87 S. W. 788, 27 Ky. Law Rep. 999, and Trustees of Graded Free Colored Common Schools of City of Mayfield v. Trustees of Graded Free White Common Schools of City of Mayfield, 180 Ky. 574, 203 S. W. 520, 521, relied on by appellant; but the Montgomery case was an action to recover damages in the sum of $250. On the trial, the evidence, as limited by the court, showed the plaintiff only entitled to recover $35; whereupon the court peremptorily instructed the jury to find for the defendant on the ground that it was without jurisdiction. On appeal, the judgment was reversed, the court saying: "The circuit court erred in holding that it was without jurisdiction to hear and determine the case. The amount of damages sought by appellant was $250. This was suffi-

cient to give the court jurisdiction. After obtaining jurisdiction, the court could not dismiss the case, because in its opinion the proof showed appellant entitled to only $35. Jurisdiction in *such* cases depends, not upon the amount to which plaintiff shows himself entitled, but upon the amount sued for.''

The Denham case was an action by the aunt of a deceased person to recover damages for mental suffering caused by having to keep the body of her nephew two days and nights by reason of the delay of a telegraph company in delivering a message. This court held that, while the lower court properly struck from the petition so much of it as sought to recover for mental suffering, leaving alone the question of nominal damages, it was error to sustain a demurrer for want of jurisdiction of the amount in controversy, as plaintiff was entitled to have the question adjudicated.

In the Trustees case, the trustees of the colored school sought to recover of the trustees of the white school the sum of $2,797.43, alleged to be due the colored school as its pro rata part of $14,226.77 taxes paid to the white school by certain corporations. The court sustained a demurrer to all the paragraphs of the petition except one, where the particular tax paid was $71.55, and of which the colored school claimed $13.65, and, as this sum was less than the court's jurisdiction, a special demurrer was sustained. In reversing the judgment, this court said: ''The amount sued for was $2,797.43, which, of course, was the jurisdictional amount. The sustaining of the demurrer to all of the petition, except that paragraph setting forth the $13 item, did not relieve the court of jurisdiction. Jurisdiction in *such* cases depends, not upon the amount the plaintiff may show himself entitled to recover, but upon the amount sued for.''

It is apparent, therefore, that neither of those cases is in point. Neither of them was based upon a writing fixing the liability of the defendant as is the case here. The writing filed with the petition in this case fixes defendants' liability and the amount plaintiff is entitled to recover. It contradicts the allegations of the petition, and, being unimpeached and unexplained by the petition, must control.

It follows, therefore, that the judgment of the lower court should be, and it is, affirmed.