THOMAS, Justice.
In the chancery court the appellant and the appellee, Florida ■ State Racing Commission, were defendants; the appellees Robert Neil McKay and Volusia County Kennel Qub, a corporation, were plaintiffs ; Gandy Operating Company and Monro Operating Company, both corporations, were intervenors; and attorneys for Fronton Exhibition Company were amici curte.
McKay was described in the complaint as a resident, citizen and taxpayer and Volusia County Kennel Club was alleged. to have owned and operated a dog race track since 1947.
On-29 March 1955, McKay ánd Volusia County Kennel Club filed their complaint seeking a decree declaring a permit issued by the racing commission to Volusia Jai-Alai void, enjoining any action under the permit, any construction óf a fronton and any'application for dates to operate. The racing commission had issued the challenged permit 11 August 1954 to allow Volusia Jai-Alai to operate a fronton near Daytona Beach in Volusia County.
The permit carried the recital that inasmuch as a majority of the electors of the county had voted in favor of operating horse and dog tracks under the provisions of Chapters 550 and 551, Statutes of Florida 1941, as amended, F.S.A., no election for ratification of the permit would be required to make it effectual.
' According to the averments of the complaint an election had been held in the county to determine whether or not horse racing should be allowed and another to determine whether or not dog racing should be approved. In both elections a majority of the voters favored ratification. Neither, the plaintiffs charged, complied with the provisions of Section 551.12, Florida' Statutes 1955, and F.S.A., that in certain circumstances no election need be held as a condition precedent to issuance of a permit to operate a fronton. The plaintiffs asserted that an election in Volusia County was a prerequisite to a valid permit to operate a fronton there.
We now quote the pertinent part of Section 551.12, supra: “No election provided for by chapter 550 shall be required as a condition precedent to the granting of a permit for the operation of a fronton of jai alai or pelota in any county wherein elections have heretofore been held in which a majority of the electors in such elections voted in favor of the operation of more than one horse or dog race track” (Italics supplied.)
*336 The plaintiffs then stated the contention of the defendant, Volusia Jai-Alai, that it was entitled to operating dates during the period between June 1 and September 30, both inclusive, because the county lies wholly east of the St. Johns River and south of Matanzas Inlet. Having set forth the position of this defendant with reference to- the operation dates, the plaintiffs proceeded to deny that it was eligible for such award.
In its answer Volusia Jai-Alai admitted the allegations of the complaint and asserted that these facts showed the validity of the permit issued to it and manifested that no election had been necessary. It was alleged in the answer that on 25 October 1954 the racing commission granted Volusia Jai-Alai permission to begin operation 1 June 1955 and to continue through 24 September 1955, a period of •100 days exclusive of Sundays. It was prayed in the answer that the permit be adjudged valid and that the operating dates be approved.
The defendant racing commission in its answer maintained that the permit was legal but denied that Volusia Jai-Alai was entitled to operating dates between May 31 and October 1.
The chancellor disposed of the litigation by a summary decree. He found that the racing commission had authorized Volusia Jai-Alai to run a fronton and had assigned it the operating period extending from 1 June 1955 to 24 September 1955, both inclusive. He epitomized the attack as one involving the validity of' the permit and the legality of the assignment of dates on which jai alai or pelota games could be played.
The chancellor, dealing first with the question" of the validity of the permit, observed that ordinarily the operation of frontons must be approved by the voters of the county, Section 550.06, Florida Statutes 1953, and F.S.A., and noted that Volusia Jai-Alai was relying on that part of Section 551.12, supra, which we have already quoted. He commented that the plaintiffs attacked this law on the ground that it contravened Sections 1 and 12 of the Declaration of Rights of the Constitution of Florida, F.S.A. because under it a fronton could, in the circumstances specified operate in the absence of an election which was a right not. vouchsafed to operators of dog and horse tracks. The court thought the difference in the nature of horse and dog tracks on the one hand and jai alai frontons on the other should eliminate that point from further consideration. The constitutional point is not pressed here.
The next aspect discussed by the chancellor was the significance of the word “heretofore” which we italicized in quoting from Section 551.12, supra. This section came from a law enacted in 1935, Section 10, Chapter 17074, and it was argued before him that that portion of it quoted made it applicable, because of the word “heretofore”, only to those situations where the elections with reference to “more than one horse or dog race track” had been held before the law became effective and not-to the effect of later elections upon later permits. In other words, if this, argument succeeded, Volusia Jai-Alai could not rely upon elections held after the passage of the act although before the issuance of the permit to this defendant. The chancellor concluded that the section was re-enacted every two years, had been re-enacted in 1953, and that because of the re-enactments the contention was wanting in merit. L’Engle v. Forbes, Fla., 81 So.2d 214.
The chancellor then treated of the contention that the elections, even if relevant after the effective date of the act, were not sufficient because there had -been but one in regard to a dog track and but one in regard to a horse track while the language of the act should be construed to require at least two elections with reference to one or the other. He construed the words “horse or dog” as modifying the words “race track” and decided, in effect, *337 that two elections were sufficient even if one affected a horse race track and the other a dog race track.
So the permit was declared valid.
There remained the question of the limitations upon the periods that frontons could be operated in Volusia County.
Under the original act, Chapter 14832, Laws of Florida, Acts of 1931, racing was prohibited between April 1 and December 1 of each year, no horse-racing meet could last longer than fifty days and no dog-racing meet could last longer than ninety days in any twelve-month period. The statute lacked mention of jai alia. By Chapter 17074, Acts of 1935,'jai alai was recognized and frontons were placed under the jurisdiction of the racing commission. There was no mention in that act of operation dates but the chancellor decided that inasmuch as frontons were “subject to the terms, powers, duties and liabilities as set out in Chapter 14832,” supra, the initial act, the closed season there defined would apply to the frontons.
The chancellor painstakingly chronicled the appropriate acts and analyzed briefly .changes -that had been made in certain features of racing by Chapter 17276, Laws of Florida, Acts of 1935, and" Chapter 21636, Laws of Florida, Acts of 1943.
Following enactment, of these laws, Chapter 22614, Laws of Florida, Acts of 1945, was passed and for the first time frontons were specifically made subject to laws applying to dog tracks, that is, features of fronton operations not expressly covered by laws relating to jai alai were put under the statutes governing dog racing.
By the statute last cited the commission was prohibited from limiting the number of days of operation “in any twelve-month period * * * to less than ninety days during the period extending from and including the first day of December * * * to and including the 10th day of [the following] April * * *These operation days, the chancellor reminded, coincided with those specified before that time for the dog racing season except for a temporary change brought about by Chapter 21636, Laws of Florida, Acts of 1943.
In 1945 the legislature enacted Chapter 22599 establishing the dog racing season as that period beginning with November 15 and extending. through the following May. At the next session of the legislature Chapter 24360 was enacted. In it was the provision that summer dog racing should be held only from June 1 to September 30, both inclusive, “in counties lying wholly east of the St. Johns River and south of the Matanzas inlet * * *.”
The chancellor construed Chapters 22599 and 22614, supra, both passed at the ses.sion of the legislature of 1945, in pari materia. In doing so he concluded that the legislature meant to fix the periods for operation of frontons as beginning the first day of December and ending the, 10th of the following April.,
In conclusion the court held that the permit issued to Jai-Alai was valid, no election having been necessary; that Jai-Alai was entitled to operating dates during the term beginning December 1 and ending the ensuing April 10; and that the action of the commission in allowing it to start operation June 1, 1955 and continue through 24 September 1955 was illegal.
Having analyzed the pleadings and the decree; we come to the points presented by the appellant. In effect it contends that Section 550-.04, supra, applies and that as dog racing is authorized in Volusia County from June 1 to the following September 30, both inclusive, a fronton may be operated during the same period and, conversely, that Section 551.12, supra, does not limit the operation' of frontons to the term beginning December 1 and ending the 10th of the following April.
*338 It is well to remember that it is provided in Section 550.04, supra, that dog races may be held during the period beginning November 15 and ending May, 31, designated the “winter dog racing season” and that “summer dog track meetings shall be held only during the period beginning with and including June 1st and up to and including the30th day of September, in counties lying wholly east of the St. Johns River and south' of the Matanzas inlet * * * » Because of the geographical location of Volusia County, summer dog facing was authorized there.
With this excerpt should be compared the provision in Section 551.12, supra, placed there by the .amendment of 1945, Chapter 22614, supra, “that the said commission shall not limit the number of operation days in any twelve-month period for such operators of licensed frontons to less than ninety days during the period extending from mid''including the first day of December in each year to and including the 10th day of April of the following year. * * * ” (Italics supplied.)
The pivotal question, so far as the legality of that part of the permit granted Jai-Alai fixing operation dates is concerned, seems to be this: Did the portion of Section 551.12, supra, we italicized, exclusively establish the time for operating frontons?
As we have written at the outset, the chancellor, after careful consideration of the history of legislation regulating racing and analyses of pertinent statutory provisions, reached the conclusion that the proviso in Section 551.12, supra, was a limitation on the preceding portions of the act relating to dog racing and fixed the season as that period beginning the 1st day of December and ending the 10th day of April.
We do not. disagree with the statement that the proviso was a limitation but our view of the effect of the limitation does not coincide with his.
The conclusion on this point depends on an interpretation of the language used which is not too clear as this very litigation demonstrates. The section begins with the provision with reference to the unneces-sariness of election where elections had been held at which the voters favored dog or horse racing. A discussion of this part of the section will be deferred until we reach the second question.
From that place on there appears, to us to have been a definite purpose to put fronton operation in the same category with dog racing. It was specified that “[a]ll other pertinent provisions of chapter 550 [no particular sections, but the entire chapter consisting of more than a score] of the Florida Statutes, dealing with the powers, duties and liabilities of the state racing commission and of the operators of dog racing tracks [not horse racing tracks] and dealing with the location thereof and with the issuance and granting of permits and licenses to conduct dog racing, not inconsistent with the express provisions of this chapter shall be construed to relate to and govern the state racing commission and the operators of any fronton and the location thereof and the issuance and granting of permits and licenses for the operation of frontons under the provisions of this chapter as fully as if the same were herein expressly set out * * *.” (Italics supplied.) We pause at the semicolon in the section to observe how comprehensively the subject is covered and to state the apprehension that had all portions of the chapter been incorporated “fully” provisions in respect of dates and the grant of licenses for operation and all the functions of the commission as well as the operators would apply alike to dog racing and fronton operation.
Now for the condition: “Provided * * * that the * * * commission shall not limit the number of operation days in any twelve-month period for such operators of licensed frontons to less than *339 ninety days during the period extending from and including the first day of December in each year to and including the 10th day of April of the following year.”
This proviso, in our opinion, is a limitation, but a limitation on the power of the commission and not one on the period during which frontons may be operated.
Before the amendment of 1945 which now appears in Section 551.12, supra, the dog racing season had been fixed as November 15 to May 31, both inclusive, under Chapter 22072, Laws of Florida, Acts of 1943, and no summer season had been established.
The chancellor attached significance to the facts that the dog racing season before the passage of Chapter 22072, supra, had begun on December 1 and ended April 10; that by that act it was changed, because of World War II, to the period beginning November 15 and ending May 31, with the provision (section 3) that on July 1, 1945 it would revert to the original term; and that during the session of the legislature held in 1945 there was enacted Chapter 22599, supra, which retained the period that had been temporarily set in Chapter 22072, supra. This would, in a measure, explain the discrepancy in dates but would not, in our opinion, affect the construction we give the proviso.
It was in an amendment of Section 550.-04 that summer dog racing was permitted in counties south of Matanzas Inlet. and east of the St. Johns.River. As we have stated, the time fixed in Section 550.04, supra, for winter dog racing does not coincide with the season defined in the proviso. This makes our task more difficult. We cannot see too much logic in a provision that a season should begin November 15 and end May 31, as in the case of winter dog racing, and a provision that during a period beginning 15 days later and ending 54 days earlier, in the case of fronton operation, the power of the commission would be curbed to the extent that they could not restrict the operation of the fronton to fewer than 90 days. But that seems to us to be what the legislature said. We have the choice between that interpretation and the one chosen by the chancellor of taking the proviso as a definition of the fronton season instead of a limitation on the power to reduce the period of operation below 90 days. Under Section 550.‘08, Florida Statutes 1953, and F.S.A., the .commission is inhibited from granting a license for dog racing for a term longer than 90 days in any season but is not precluded from shortening the time. In view of the restriction, we are puzzled by the apparent action of the commission in issuing the permit involved in this case for 100 days. We ascertain this from the minutes and not from the permit itself. But even if the permit was actually issued for 100 days the action would not indicate an abandonment of the administrative interpretation that dates for fronton operation in summer should be governed by the law fixing dates for dog racing.
Another ambiguity that confuses the situation but upon scrutiny seems to support our view is the reference in the proviso to two periods. It is provided that the commission shall not limit the number of operation days “in any' twelve-month period * * * to less than ninety days” during the period from the 1st day of December to the 10th day of April. If the twelvemonth period is computed from the first available operation day, Stein v. Biscayne Kennel Club, Inc., 145 Fla. 306, 199 So. 364, and the summer racing and winter racing seasons specifically authorized in Section 550.04, are applied to fronton operation, the proviso may be construed as a guarantee to fronton operators of a 90-day season in the winter, period and such season in the summer period as the commission may in its discretion assign. Under such a construction the - relevant parts of the various acts are preserved. The proviso which is “inconsistent” with the law governing dog racing in winter would apply to frontons during that time of the year, and the law regulating dog racing *340 in summer would also regulate frontons in summer.
This court has frequently applied statutes involving dog racing to facts affecting jai alai or pelota frontons, as in State ex rel. Fronton Exhibition Co. v. Haggard, Fla., 67 So.2d 205, dealing with required distances between frontons, and the Fronton, Inc., v. Florida State Racing Commission, Fla., 82 So.2d 520, with reference.to establishment and operation of frontons.
, Our conclusion is buttressed by the legislative as well as judicial history of contests involving phases of the law regulating frontons and by the administrative interpretation which should not be disregarded. State ex rel. Comfort v. Leatherman, 99 Fla. 899, 128 So. 21; Gay v. Canada Dry Bottling Co. of Florida, Inc., Fla., 59 So.2d 788.
The second question arises from the language used in the first sentence of Section 551.12, supra,. about the time of the prerequisite . election . and the nature of the elections held. Generally speaking an election is a condition precedent to the issuance of a valid permit.
To make this challenge, by appellees in the cross-assignment, clear it is better to quote the language used by the legislature: “No election * * * shall be required as a condition', precedent * * * in any county wherein elections have heretofore been held in which a majority of the electors * • * * voted in favor of the 'operation of more than one horse or dog race track.” We have italicized the'words giving rise to the problems now confronting us.
It is insisted that the word “heretofore” referred to a time that ended with the passage of the act; that, in effect, the word means “until now,” as it does, and that the “now,” so to speak, was a reference to the time of enactment. If this construction is accepted then subsequent elections would not meet this requirement because it would be necessary that the prerequisite elections had been held at the time the law was enacted. In other words, this would mean that elections as to horse and dog racing held after the passage of the act, more than 20 years.ago, could not become, or have become, substitutes for the election to determine whether or not a fronton could be operated. The chancellor disposed of this question contrary to appellees’ theory on the ground that the statute had been re-enacted in 1953 and that -the reference then became one to a period ending at the date of the re-enactment:
It seems to us that in view of the purposes of the legislation dealing with horse racing, dog racing and fronton operation and the allied subjects such.as pari mutuel betting there was no occasion to use the word “heretofore” restricting the qualification to elections held before 1935, instead of the word “theretofore” so that the provision would be ambulatory. We think that the sense of the whole legislation may not be preserved if .the word “heretofore” is isolated and given the strict, even if proper, definition as referring to the time transpiring at the passing of the act and not extending beyond that period. There seems to have been no reason for an election to determine the will of the people about frontons after the year 1935, without regard to former elections, while elections relative to frontons before that time were unnecessary if elections on racing had been held, It is obvious from the statutes and from facts of which this. court takes judicial knowledge that many features of race tracks are common to jai alai frontons and require similar if not identical regulation and supervision. We think the word “heretofore” should be construed to apply to the time applications are made and not be restricted to the time the act was passed so many" years ago. Miller v. Feather, 176 Ky. 268, 195 S.W. 449; People ex rel. Whipple v. Judge of Saginaw Circuit Court, 26 Mich. 342; Miller’s Mut. Fire Ins. Co. v. City of Austin, Tex.Civ. App., 210 S.W. 825.
*341 We reach the last aspect of this knotty controversy, namely, the construction of the provision relative to nature and number of prior elections. As has been seen from the italicized portion of the first sentence of Section 551.12, supra, the elections that become a condition precedent to the issuance of a permit to operate a fronton are those at which a majority of voters have favored inore than one horse or dog track. The appellees insist that by use of the word “or” it is necessary that two elections favoring dog racing have been held or two elections favoring horse racing, but that the requirement is not satisfied if one of the elections resulted in a vote approving dog racing and one approving horse racing. Here again it occurs to us that a strict interpretation would bring an impractical result.
We have already adverted to characteristics common to dog racing, horse racing and fronton operation. It is necessary that they be policed and that supervision be exercised by the state, too, because of the state’s interest in the earnings. And because of the interest of the people in the counties where the enterprises are located, the approval of the electorate in these counties must first be obtained. But when these elements are borne in mind we conceive no reason for holding that two elections approving either would suffice' as a basis for a permit fo operate a fronton while an election as to each would not. There is.no such difference in essential features as would warrant the' distinction.
We reiterate frankly. that • we have not been uninfluenced by the administrative construction.
We conclude that the permit was valid and the operation dates legal but that summer operation should be limited to 90 days.
If the legislature had intended that the terminal dates in the proviso should describe and limit a period during which frontons could be operated, it would have been quite easy to have expressed the purpose in direct simple language. When all the relevant acts are compared, the proviso becomes an interpreter’s nightmare. We have tried assiduously to use all the language and have it make sense.
As a result of the effort, we decide that the decree should be affirmed in part and reversed in part. 'It is so ordered with directions to proceed accordingly.
DREW, C. J., and TERRELL and ROBERTS, JJ., concur. '