DREW, Justice.
Volusia Jai-Alai, Inc., relator in this original mandamus proceeding here, is a corporation of the State of Florida, having been organized on May 21, 1954, under the laws of the State of Florida with its principal place of business in Daytona Beach, Volusia County, Florida. The Florida State Racing Commission, respondent in *5 this proceeding, on August 14, 1954, granted to the relator a permit to erect and operate a jai alai fronton under the peri-mutuel laws of the State of Florida, in Volusia County, Florida. Volusia County is situate wholly east of the St. Johns river and south of an east-west line from the Matanzas inlet to said river.[1] Relator commenced operations on June 4, 1959, and completed one full summer season of ninety days.[2]
In June, 1959, relator applied to respondent for additional operating dates of not less than ninety days during the winter season of the twelve month period ensuing from June 4, 1959. When respondent denied this application,[3] relator applied to this Court for a writ of mandamus directed to respondent commanding it to grant forthwith relator an additional ninety days operating period during the winter season. Our alternative writ issued and oral argument was heard upon a motion to quash such writ and for the issuance of a peremptory writ.
The keystone of this proceeding is concisely stated by the respondent as follows:
Is Volusia Jai Alai, Inc. entitled, as a matter of right, to both a winter Jai Alai operating period and a summer operating period, the combination of which would be in excess of one hundred (100) days during a twelve (12) month period?
Respondent concedes that relator is entitled to not less than ninety days during the winter season from December 1 of one year to and including April 10 of the following year based on the McKay case holding:
“* * * If the twelve month period is computed from the first available operation day, Stein v. Biscayne Kennel Club, Inc., 145 Fla. 306 199 So. 364, and the summer racing and winter racing seasons specifically authorized in Section 550.04 are applied to fronton operation, the proviso may be construed *6 a ninety-day season in the winter period and such season in the summer as a guarantee to fronton operators of period as the commission may in its discretion assign * * [4]
In arriving at this conclusion the Court compared the relevant acts with the comment that the proviso contained therein becomes an “interpreters nightmare”. Sub-séquént legislation has, instead of clarifying the situation, only added to the confusion. However, absent the statutory authority, the Court did not intend the underscored conjunction to become the authority for cumulative periods as a matter of right in excess of the statutory limit fixed in Chapters 550.04, 550.08 and 551.12. This becomes increasingly clear upon a careful and studious review of the exact words of the Court in the McKay case.
Since the original pari-mutuel act was passed in 1931 and until the passage of Fla. Laws 1959, Chapter 59-417, there appears no legislative sanction for dog racing meets or fronton operation periods in excess of ninety days in any twelve month period or during the course of any “racing season” for dogs or the operation of frontons. This is the common denominator of all the 'legislation relating to these forms of authorized gambling. Chapter 59-417, supra, does not apply to relator but it is a clear expression of the consistent attitude of the Legislature not to extend the privilege to any plant to operate more than 100 days in any twelve months period. Relator admits it does not derive its operating authority under this Chapter, but under the dog track law, Fla.Stat. 550.04, F.S.A. By that criterion alone, it becomes crystal clear that the limitation of the aggregate number of days in which it can operate is delimited by the combination of legislation other than Chapter 59-417. When the fact is kept in mind that the Legislature has not acted so as to allow for additional periods in excess of ninety days, there is no ambiguity in all of the legislation; nor is there when the separate sections are construed alone or in, pari materia with other existing statutory provisions.
“[2] Our conclusion is buttressed by the legislative as well as judicial history of contests involving phases of the law regulating frontons and by the administrative interpretation which should not be disregarded. State ex rel. Comfort v. Leatherman, 99 Fla. 899, 128 So. 21; Gay v. Canada Dry Bottling Co. of Florida, Inc., Fla., 59 So.2d 788.”
In addition, although not necessarily controlling, the contemporaneous adminis-strative construction of the enactments by those charged with its enforcement and interpretation, in this instance the Florida State Racing Commission, is entitled to great weight. Courts will not depart from such construction unless it is clearly erroneous or unauthorized.[5]
An important consideration is the fact that Fla.Stat. 551.09, F.S.A., permits parimutuel wagering on the game of jai alai. We have held that:
“* * * a jai alai fronton, like a horse or dog track, is but another form of authorized gambling and, as such, ‘is matter over which the state may exercise greater control and exercise its police power in a more arbitrary manner because of the noxious qualities of the enterprise as distinguished from those enterprises not affected with a public interest and those enterprises over which the exercise of the police power is not so essential for the public welfare.’ Hialeah Race Course, Inc. v. Gulfstream Park Racing Association, Inc., Fla., 37 So.2d 692, 694 * * [6]
The wisdom of the Legislature in setting the limits it has cannot be questioned. It *7 is for them to determine. Suffice it to say, we fail to find any legislative approval of more than one hundred racing days to any one establishment in any twelve months period until 1959 when it enacted Chapter 59-417, supra. Previous legislative history is outlined in the McKay case.
We now revert to the command of the alternative writ of mandamus which seeks an order compelling the respondent to issue or grant forthwith to relator operating dates of not less than ninety days during the winter season and to do so without limiting relator’s summer jai alai operation days to less than ninety days in number. As we have pointed out heretofore in the McKay case, fronton operators in this state, and this relator in particular, are guaranteed a ninety day season in the winter period and such season in the summer period not exceeding ninety days as the Commission may in its discretion assign. This language and our interpretation of the applicable laws require us to hold that the relator is entitled to a peremptory writ directing the Commission to assign to it racing days during the winter season of not less than ninety days. We decline to hold, however, as prayed in the alternative writ, that such command does not limit relator’s summer jai ala-i operation days to less than ninety days in number. Our decision that the Commission must comply with the mandatory portion of the law should not in any way be construed as interfering with the exercise of its discretion in assigning such days during each summer session as it may determine as limited by our decision in the McKay case.
The motion to quash the alternative writ is denied. Relator’s application for peremptory writ as prayed for is denied but with leave to relator to apply for a peremptory writ in accordance with this opinion and judgment.
THOMAS, C. J., and ROBERTS, THORNAL and O’CONNELL, JJ., concur.'

. The location is vital to the determination of relator’s allegations in this matter as relator relies on the provisions of Fla.Stat. § 550.04, F.S.A. While this Section relates specifically to horse and dog racing, Fla.Stat. § 551.12, F.S.A. provides that § 550.04, where not inconsistent with Fla.Stat. § 551.12, F.S.A., applies to the operation of fronton*.

. Relator’s right to this period was adjudicated in Volusia Jai-Alai, Inc. v. McKay, Fla.1956, 90 So.2d 334, at page 341, where the Court held: “We conclude the permit was valid and the operation dates legal but that summer operation should be limited to 90 days.”

. Excerpt from minutes of meeting held by Florida State Racing Commission on August 14, 1959:
“ * * * advised in the premises, the Commission finds as follows:
“1. When Chapter 551, Florida Statutes, [F.S.A.], and Chapter 59-417 (House Bill No. 977), Laws of Florida, Acts of 1959, are considered in pari ma-teria it is clear that ordinary fronton permit holders are limited to a maximum of one hundred operational days during any twelve month period.
“2. The applicant, Volusia Jai-Alai, Inc., has stated in its application that if it cannot be granted operational periods in both summer and winter, then it desires to have its operational period during the summer. This Commission is firmly convinced that the applicant cannot be granted both a summer and a winter operational period. The Supreme Court of Florida has held that if this applicant desires to operate during the summer season its operational period is controlled by the law relating to dog tracks, and is limited to a maximum of ninety days between June 1st and September 30th.”
“Mr. Toole moved that the application of Volusia Jai-Alai, Inc., for winter operational dates for 100 days be denied; Mr. Johnson seconded the motion and the motion was unanimously carried. The applicant, Volusia Jai-Alai, Inc., was notified that upon proper application for summer operational dates it would be granted 90 days, plus one day for scholarship and one day for charity, if requested.”

. Supra, at pages 330, 339.

. Gay v. Canada Dry Bottling Co. of Florida, Fla.1952, 59 So.2d 788, 790. Also see State ex rel. Comfort v. Leatherman, 1930, 99 Fla. 899, 128 So. 21, 24 and also see the McKay case, supra, where we said:

.Rodriguez v. Jones, Fla.1953, 64 So.2d 278, 279.