CARROLL, CHAS., Judge.
On March 17, 1959, the appellee Martin Miller filed a petition for declaratory decree in the circuit court for Dade County, against the City of Miami Beach and its Personnel Board. He alleged that on February 26, 1958, he was employed by the city as a police officer at a salary of $439 a month, under civil service and subject to “the personnel rules approved by the Personnel Board and adopted by the City of Miami Beach on March 8, 1939, as subsequently supplemented and amended”; that on February 26, 1958, he was injured in line of duty when a police patrol car in which he was riding was struck in the rear by another vehicle; that on the following day he was given notice by the city of suspension because of certain criminal charges which had been lodged against him; that on July 14, 1958, the criminal charges for which the city had suspended him were dismissed, and that he then notified the city, through counsel, he was ready to return to work; that he proceeded to press a claim of disability before the Industrial Commission, which, on August 22, 1958, awarded him compensation at the rate of $35 per week for the period of his disability. The record discloses that he received such compensation of $35 a week from the time of his accident until November 20, 1958, at which time he returned to work for the city.
*580 The petitioner quoted the Personnel Board’s rule X, § 1, which made provision for suspension of an employee who has been indicted or informed against in a criminal proceeding and which provided that “acquittal shall entitle such employee to reinstatement and recovery of all wages and emoluments lost by reason of such suspension.” The petition also called attention to rule. XII, § 3.1(b), relating to the payment by the city of salary of an injured employee.[1]
The petitioner sought his salary less the workmen’s compensation benefits received for the period that he was not working, and alleged that the city had paid full salary to all other police officers injured while on duty. The city answered averring it had paid disability compensation from the date of injury to March 11, 1958, but on the advice of its physician disclaimed liability thereafter; that as later ordered, the city had paid the workmen’s compensation award of $35 a week from the period of injury to November 20, 1958, at which time the petitioner returned to work. In its defense of the case, the city took the position that it was not required to pay the salary of the policeman while he was under suspension from February 27 to July 14, and that the city was entitled to and did elect not to pay his salary (less workmen’s compensation) from July 14 to November 20, when he returned to work. After hearing before the court a final decree was entered, which, after reciting the facts substantially as they are set out above, ordered the city to pay the petitioner the full salary he would have earned from February 26, 1958, to July 14, 1958 (covering the period he was under suspension because of a pending criminal prosecution), less disability compensation payments during that period. The decree denied the petitioner’s claim for such full compensation from July 14, 1958, the date on which the criminal proceedings were dropped and his suspension terminated, to November 20, 1958, the date he returned to work.
The defendants City and Personnel Board have appealed and seek reversal of the provision of the decree requiring payment of salary during the period of suspension from February to July. Appellee-petitioner filed cross-assignments of error by which he contended that the court was in error in failing to decree that he was entitled to his full salary (less disability compensation payments) for the period for which the court denied them to him, from July to November, and petitioner cross-assigned as error the failure of the trial court to allow payment of counsel fees in the cause.
Due note must be given to the fact that in prior instances where the provision *581 was called into play, the city paid such personnel full salary (less disability compensation) when injured on the job. In construing such a provision considerable weight must he given to a meaning which has been assigned to it consistently and over an extended period by those officials charged with its administration, unless such construction is clearly erroneous. See State ex rel. Volusia Jai-Alai, Inc. v. Ring, Fla. 1960, 122 So.2d 4; 1 Fla.Jur., Administrative Law, § 73; 47 Am.Jur., Public Administrative Law, § 78. We refer to that canon of construction more to show its accord with the meaning we place upon the Personnel Board’s rule than through need for its aid, because the meaning, consistent with the city’s prior interpretation, appears clear in the wording of the rule in question.
When this rule 3.1(b) is read as a whole, it becomes apparent that the clause “and subject to approval of the City Manager after consideration of the circumstances surrounding the injury,” does not, as the city now for the first time contends, give the city the election, through its city manager, to allow or deny full compensation to such injured employees, but the meaning of that clause is that payment is dependent on the city manager approving it as one within the terms of the rule, that is, before the payments are due, the city physician must certify that the injury occurred as contemplated by the rule, and also the city manager must approve the payment as having occurred under conditions of employment and in the circumstances for which under the rules the employee is authorized to receive such compensation while thus disabled.
The rule contains elaborate and exact instructions in subparagraphs 1 and 2, as to amounts to be paid employees, when on a weekly payroll and as to those on monthly payrolls. Most significant is subparagraph 3, which provides that such payments shall continue “for a period not to exceed 13 weeks,” unless extended by the city manager with approval of the city council. Thus, those injured employees under civil service, as to whom the city physician and city manager conclude that the rule applies, are entitled to full salary as there provided, for a period of 13 weeks, with the city allowed to elect to extend it beyond 13 weeks.
The injury occurred and disability began on February 26, 1958, and the 13 week period ran to May 28, 1958. In the absence of any action taken by the city manager and city council to extend the payments in this case beyond 13 weeks, and the record shows none, the payments could not continue after May 28, 1958, under the Personnel Board’s applicable rule, XII, § 3.1(b) 3.
The city’s argument that such full compensation payments should not have been required by the court to be paid during the period of suspension is without merit, because upon dismissal of the criminal charges which prompted the suspension, the employee was reinstated and entitled to that compensation he could have and would have received had the suspension not occurred. Had he not been suspended, then he would have been entitled to receive his full pay as outlined and for the period stated hereinabove.
The chancellor properly denied the petitioner’s request for an allowance for attorney’s fee, as the Personnel Rule XI, § 6 relied on as a basis for the request was not applicable in the circumstances presented.
The decree is affirmed in holding that the appellee should receive his full pay, less disability compensation payments received, after his injury on February 26, 1958, but only for the period of 13 weeks, ending May 28, 1958. The decree is reversed to the extent it allowed appellee such full compensation for more than 13 weeks, that is, from May 28, 1958, to July 14, 1958. The decree is affirmed in denying such full compensation for the balance of the period of disability, from July 14 to November 20, 1958.
Affirmed in part and reversed in part.
HORTON, C. J., and PEARSON, J., concur.

. The provision of the rules referred to was as follows:
“(b) Injury Service Connected: Any employee with probationary or Regular status absent from duty because of injury which is the direct result of their City duties and which is so certified by the City physician and subject to approval of the City Manager after consideration of the circumstances surrounding the injury shall continue to receive pay during the period of such absence, to be computed as follows:
“1. Employees carried on a weekly payroll shall receive such sums as shall be equal to the difference between the amount of their normal weekly pay and the amount of compensation payable under the provisions of the Workmen’s Compensation Act. The amount of their normal weekly pay shall be computed on the basis of five (5) days at eight (8) hours each if their normal work week consists of five (5) clays, or on the basis of six (6) days of eight (8) hours each if their normal work week consists of six (G) days, all as determined by their department head.
“2. Employees carried on a monthly payroll shall receive such sums as shall be equal to the difference between then-salary for the period of such absence prorated on the basis of a thirty (30) day month and the amount of compensation payable under the Workmen’s Compensation Act.
“3. The payment of the sums provided for in this sub-section (b) shall continue for a peiiod not to exceed thirteen (13) weeks, unless such period be extended by the City Manager with the approval of the City Council.”